IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| THEOTIS THORNTON, ADC #144954 | * | |
| | * | |
| Petitioner, | * | |
| v. | * | |
| | * | No. 5:14CV00241-JJV |
| RAY HOBBS, Director, | * | |
| Arkansas Department of Correction | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM AND ORDER**

Before the Court is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed by Theotis Thornton, an inmate in the Arkansas Department of Correction.

**I.   BACKGROUND**

Mr. Thornton was convicted of aggravated residential burglary by a Pulaski County jury. (Doc. No. 1.) He was sentenced to thirty (30) years' imprisonment in the Arkansas Department of Correction. (*Id.*) Mr. Thornton appealed his conviction and sentence arguing the circumstantial evidence did not prove that he committed the offense; the Arkansas Court of Appeals affirmed in an opinion dated September 1, 2010. See *Thornton v. State*, 2010 Ark. App. 569.

The Arkansas Court of Appeals recited the evidence supporting his conviction as follows:

The record reflects that Shalonda Jordan and her two children shared a townhouse apartment on Markham Street in Little Rock with her fiancé, Frenchie Branscomb. At approximately 2:38 a.m. on the morning of October 15, 2007, Jordan and Branscomb were awakened by a loud noise coming from downstairs. Branscomb grabbed a Taurus .45–long Colt/.410 handgun and went to investigate. As he descended the stairs, he saw in the kitchen a large man wearing a hoodie and a bandana that obscured the man's face. As the intruder approached, Branscomb leaned over the rail, fired a shot, and then ran back upstairs. Jordan, who heard two shots, summoned the police. She testified that nothing was missing from the apartment but that the intruder had rummaged through the kitchen.

When the police arrived, they discovered that the frame to the front door was splintered and that the door had been forced open. Mickey Holloway, a crime-scene specialist, took photographs of two large shoe prints that had been left on the front door. He also removed a .38–caliber full-metal-jacket slug from the wall on the stairwell where Branscomb had been standing. He found no blood at the scene and lifted no fingerprints other than those that belonged to the occupants of the apartment. The police also took custody of Branscomb's handgun that was loaded with both .45–long shells and .410 shells. The spent hull of a .45 shell was in the cylinder. Because he was a convicted felon, Branscomb feared the repercussions of having possessed and fired a handgun, and initially he did not inform the police that he had shot the intruder. Upon questioning by the police, he admitted that he had fired the weapon and he showed them where he had hidden the weapon outside the apartment.

Meanwhile, at approximately 2:41 a.m. on the same date, James Julian, an officer with the UAMS Police Department, received a dispatch alerting him to a car that was driving erratically toward the emergency room. While Julian was en route, he heard another report of a dark sedan occupied by a person with a possible gunshot wound. Julian found a car that matched this description located partially inside a parking space near the emergency room, and he learned that this car had dropped off a gunshot victim. He felt the hood of the car and found that it was warm to the touch, and he secured it until the arrival of officers from the Little Rock Police Department.

Detective John Stafford responded to the emergency room and identified [Thornton] as the gunshot victim, who was in serious condition. [Thornton] had been shot in the area of the right shoulder, and the doctor initially had difficulty locating the slug in [Thornton]'s body. Stafford spoke with an officer who was at Jordan and Branscomb's townhouse and learned that the shot had been fired from an elevated position. With that information, the doctor located the slug that had lodged in the area of [Thornton]'s left hip. Stafford took possession of [Thornton]'s clothing and tennis shoes. Officer Alvin Jackson recovered the slug that the doctors removed from [Thornton]'s body.

Sergeant Eric Hinsley testified that [Thornton] was six feet tall and weighed 250 pounds. He also determined that [Thornton] lived at 1614 South Martin Street. Hinsley estimated that, at two o'clock in the morning, it would take approximately five minutes to travel from the townhouse to [Thornton]'s home and another five minutes to drive from [Thornton]'s home to the UAMS emergency room.

The vehicle parked near the emergency room was a dark green 1997 four-door Saturn that was registered to [Thornton]'s girlfriend. On the front passenger seat, Officer Holloway found a Charter Arms .38–special revolver that contained one spent round and four live rounds. All of the bullets were of the full-metal-jacket variety. He also found a pair of gloves, six new bandanas, and two bandanas that appeared to have been worn. In addition, Holloway found a bag of green vegetable material from the floorboard on the passenger side of the vehicle. He swabbed the driver's seat and the worn bandanas for DNA and also lifted fingerprints from the vehicle and items inside the vehicle.

Forensically, the testimony disclosed that the .38–caliber slug removed from the wall of the townhouse was fired from the .38–special handgun found in the Saturn. The slug removed from [Thornton]'s body was a .45 caliber. The slug was damaged and could not be ballistically matched to rounds fired from Branscomb's handgun. [Thornton]'s fingerprints were found on the exterior of the Saturn and on a cigar box and beer can located inside the vehicle. [Thornton]'s DNA was found

on both of the worn bandanas. The swabs of the driver's seat of the Saturn revealed a mixture of DNA from different persons, and the results were thus inconclusive. The shoes worn by [Thornton] that were recovered from the hospital matched the shoe prints observed on the front door of the townhouse.

[Thornton] testified that he left his home on South Martin at approximately 2:20 a.m. after speaking with his father and his girlfriend. He said that he was on his way to a friend's house to play video games and that he was shot while walking down Valentine Street. [Thornton] stated that he lost consciousness after he was shot and that his first memory afterwards was that of waking up in the hospital. [Thornton]'s father, Thomas Thornton, testified that [Thornton] told him that he was leaving the house to get a phone. Daria Morris, [Thornton]'s girlfriend, testified that [Thornton] said that he was going to another home owned by Thomas Thornton on South Martin and that she fussed at him about leaving.

*Thornton*, 2010 Ark. App. 569, 1-5 (2010).[1]

After the Court of Appeals' mandate issued on September 21, 2010, Mr. Thornton filed a pro se petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37 on November 18, 2010. In it, he claimed he was denied his right to due process and effective assistance of counsel as guaranteed by the Fourteenth and Sixth Amendments. (Doc. No. 1.) The Pulaski County Circuit Court denied the petition without a hearing on March 9, 2012. Mr. Thornton then appealed, and the Arkansas Supreme Court affirmed in *Thornton v. State*, 2014 Ark, 113. The Supreme Court rejected all claims of ineffective assistance of counsel as merely conclusory allegations which did not show prejudice and did not support his claim for relief. *Id.*

Mr. Thornton timely filed the instant petition on June 20, 2014 alleging that he received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. Specifically, he claims trial counsel failed to (1) properly cross-examine forensic expert Reuben Linder of the Arkansas State Crime Laboratory about firearm and ammunition evidence and (2) investigate sufficiently because if they had he would have been acquitted. (Doc. No. 1.)

---

[1]The Respondent's Response also provided a thorough and detailed summary of the trial court record and the evidence presented to support Mr. Thornton's conviction. See Doc. No. 9 at 10-18.

**II.    DISCUSSION**

Respondent argues that the Petition is procedurally defaulted. (Doc. No. 8 at 3.) The Court agrees.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *See* 28 U.S.C. § 2254(b) (stating a state prisoner must exhaust available state court remedies before raising a claim in a federal habeas corpus proceeding). This requirement is in place to afford the state the opportunity to correct any constitutional errors before the federal courts intervene. *Lenza v. Wyrick*, 665 F.2d 804, 807-8 (8th Cir. 1981); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("We have consistently adhered to this federal policy for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.") (citations omitted).

Mr. Thornton's claims that (1) his trial counsel failed to emphasize certain pieces of evidence to the jury, (2) the forensic evidence was inconsistent with the State's theory, and (3) the gloves were never tested for gunpowder residue, were not presented in his petition under Rule 37. These allegations have never been presented to the state courts and as such, are procedurally defaulted. *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *see also*, e.g., *Carrier v. State*, 278 Ark. 542, 543, 647 S.W.2d 449, 450 (1983).

Where procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750

4

(1991). After careful review, the Court concludes that Mr. Thornton fails to show any cause and prejudice.

Moreover, Mr. Thornton cannot satisfy the test of the miscarriage-of-justice exception. Few petitioners are "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 315 (1995). "[T]he miscarriage of justice exception requires prisoners to present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.' " *Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010) (quoting *Schulp v. Delo*, 513 U.S. at 316 (1995)). Mr. Thornton's claims do not qualify in either of these exceptions, and as such, are procedurally defaulted.

Further, Mr. Thornton's other allegations of ineffective assistance of counsel have been properly presented and ruled upon by the Arkansas Supreme Court. "In the interests of finality and federalism," federal habeas courts, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Under the AEDPA, federal review of underlying state court decisions are limited because federal courts may only grant habeas relief if the claim was adjudicated on the merits in the state court proceeding and the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); see also *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court

5

arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than the [United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); see also *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision will be based on an "unreasonable determination of the facts in light of the evidence presented . . . only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003). Neither is the case here.

For a habeas petitioner to prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate a lack of reasonable performance of counsel and prejudice resulting from the unreasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In conducting this review, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Under the performance prong, the petitioner must be able to prove that his lawyer's performance was unreasonable and not valid trial strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Thai v. Mapes*, 412 F.3d 970, 978-79 (8th Cir. 2005). Counsel's "strategic choices made after a thorough investigation are virtually unchallengeable" in a later habeas corpus action. *Strickland,* 466 U.S. at 689. To satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Armstrong v. Kemna*, 590 F.3d 582, (8th Cir. 2010) (citations omitted). A reasonable probability is one

6

sufficient to undermine confidence in the outcome. *Id*.

The Arkansas Supreme Court correctly applied the two-prong *Strickland* test for ineffectiveness of counsel.  The court, citing *Strickland*, found that in order for Mr. Thornton to prevail, "[he] was required to establish with facts that counsel made some error so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Thornton v. State*, 2013 Ark. 113 (2014).  The Arkansas Supreme Court found that "the allegations, taken one by one, were entirely devoid of any factual substantiation from which it could be determined that [Thornton] had been prejudiced in any specific way by his attorney's performance. Such substantiation is crucial to the trial court's ability to determine whether an attorney was effective. For that reason, conclusory claims are not a ground for relief under Rule 37." *Id.*

Having carefully reviewed the record and the applicable law, this Court concludes the rejection of Petitioner's ineffective assistance of counsel claim by the Arkansas Supreme Court did not involve an unreasonable application of the *Strickland* test, and was not based on an unreasonable determination of the facts in light of the evidence as set forth in 28 U.S.C. § 2254(d).  This Court finds that Petitioner has not met his burden in proving that his counsel was ineffective, and as such, his Petition is DISMISSED as procedurally defaulted.

Although questions arise whether the United States Supreme Court's holding in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), could generally lead to a showing of "cause" for procedural defaulted claims, the Court finds it would not apply in this case. Assuming *Martinez* applies, this Court would perform a merits review of the defaulted claims if  (1) the claim of ineffective assistance was substantial, (2) the "cause" was that Mr. Thornton had no counsel in the postconviction proceeding, (3) the Rule 37 proceeding was the initial review proceeding with respect to the ineffective assistance of counsel claim, and (4) it was highly unlikely that Mr. Thornton had

a "meaningful opportunity" to raise his ineffective assistance claims on direct appeal. *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). Here, Mr. Thornton's claims fail on the first prong of the analysis. Given the facts in this case and the claims raised, the Court concludes that none of the defaulted claims rise to the level of "substantial." As such, Mr. Thornton's Petition is DISMISSED.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). In this case, the Petition is procedurally defaulted. Accordingly, no certificate of appealability will issue.

### IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Mr. Thornton's cause of action is DISMISSED with prejudice.

2. A certificate of appealability will not be issued.

DATED this 6th day of January, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE